

**ORDERED in the Southern District of Florida on May 14, 2010.**

　　　　　　　　　　　　　　　　　John K. Olson, Judge
　　　　　　　　　　　　　　　　　United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | CASE NO: 10-11265-BKC-JKO |
| SOCA IMAGING, INC. | |
| NAVIX IMAGING, INC | CHAPTER 11 |
| 　　　Debtors | (Jointly Administered) |
| _____/ | |

**ORDER GRANTING INMED DIAGNOSTIC
SERVICES OF SC, LLC'S EXPEDITED MOTION TO
APPROVE A SALE OF KISSIMMEE LOCATION FREE AND CLEAR
OF LIENS, CLAIMS AND ENCUMBRANCES AS SUPPLEMENTED [DE # 185]**

　　　　THIS MATTER came before the Court for hearings on May 3, 2010 at 11:00 a.m. and on May 10, 2010 at 3:00 p.m. (the "Hearings") upon the Supplemental Expedited Motion to Approve A Sale of Kissimmee Location Free and Clear of Liens, Claims and Encumbrances to InMed Diagnostic Services of SC, LLC, including its successors and assigns (the "Sale Motion") [DE # 185]. The Court having been informed of the Trustee's consent to the entry of this Order and having heard argument from the Trustee as well as counsel for (i) InMed;

{220323.0001/N0828186_1}
1

(ii) Soca Services, LLC; (iii) Siemens Financial Services, Inc.; and (iv) GECC, and for the reasons stated in open Court it is,

**ORDERED** as follows:

1. The Sale Motion is GRANTED;

2. InMed's purchase of the Kissimmee Outpatient Center, 1503 West Oak Street, Kissimmee, Florida 34741 (the "Kissimmee Location") pursuant to the following terms and conditions is approved:

    a. The payment to the Trustee of $100,000.00 cash at closing (the "Purchase Price");

    b. The payment to GECC for the purchase of equipment located at the Kissimmee Location that is currently subject to the GECC Lease ("GECC Equipment") as follows: $190,000 at closing or make arrangements acceptable to GECC to finance the GECC Equipment;

    c. The payment to Siemens Financial Services, Inc. ("Siemens") of $36,991.22 at closing to fully cure the pre and post-petition arrearages under the Siemens' equipment lease(s) for equipment at the Kissimmee Location ("Siemens Equipment") and Siemens shall deliver a bill of sale to InMed upon receipt of the $36,991.22;

    d. The payment to Soca Services, LLC ("Soca Services"), of $148,000.00 for the cure of any pre-petition defaults with such amount to be paid in the following manner: (i) $100,000.00 to Soca Services at the closing and (ii) a promissory note, without interest, by InMed to

{220323.0001/N0828186_1}

2

        Soca Services in the remaining portion of $48,000.00 to be paid in six (6) consecutive monthly payments, commencing thirty days after Closing;

e.   InMed will acquire ownership of all tangible and intangible personal property currently at the center including but not limited to furniture, equipment, fixtures, etc., including the right to the fictitious name, Kissimmee Outpatient Center, but excluding accounts receivable ("Assets");

f.   The acquisition does not include any obligations incurred prior or after the closing date either by SOCA or related companies, Navix Imaging, Inc., or the estate;

g.   InMed's duty to close is contingent upon Miles Gilman, or his related entities, amending the facility lease at closing (immediately after the Trustee's simultaneous assumption and assignment of the facility lease to Inmed at closing) to include modifications that are necessary to InMed for the buildings located at 1503 West Oak St. and 1101 N. Emory Avenue in Kissimmee, FL., with lease terms of: (i) rent at $28,000 per month, triple net, together with an additional amount of $10,000.00 per month for 24 months for leasehold improvements, as provided for in the documentation delivered to InMed as to the actual cost of the leasehold improvements; (ii) a lease term through November 30, 2014 with an option to the tenant to renew the 1503

        West Oak St. space for additional five year term at $16,000.00 a month triple net; and (iii) the approval of the mortgage holder(s) of the buildings.;

h.    InMed's duty to close is contingent upon execution at closing of an agreement with Soca Services to provide the same administrative services to InMed as it has agreed to provide to InMed at the Coral Springs Center, for a period of six (6) months at $40,000.00 per month;

i.    InMed shall close the Sale transaction no later than May 28, 2010, without prejudice to InMed seeking permission from this Court to extend the closing deadline and without prejudice to GECC's right to oppose any such request.  In the event that InMed is unable to close the Sale transaction on or before May 24, 2010, InMed agrees to enter into a management agreement with the Trustee, on substantially the same terms as the management agreement between the parties at the Coral Springs location, whereby InMed shall be responsible as of May 24, 2010 for all expenses incurred as of that date and entitled to all of the revenues for services provided as of that date through the termination of the management agreement. The management agreement shall have a term for up to six (6) months to allow the Trustee to continue to be the operator of the facility while InMed obtains its Medicare provider number from the applicable governmental agencies and applicable government licenses; provided, however, that such management

{220323.0001/N0828186_1}

        agreement shall not include any provision that adversely affects the Trustee or the estates, either on a monetary or a non-monetary basis, as reasonably determined by the Trustee and his counsel;

    j.    In the event InMed cannot close on the sale, it shall provide the Trustee with written notice via email to the Trustee at les@kennethrappaportlawoffice.com and InMed's responsibilities for all expenses incurred after May 24, 2010 shall cease within three (3) business day of such notice to the Trustee;

    k.    In the event InMed does not close on the Sale transaction by June 1, 2010, InMed shall be responsible for the payment (i) to GECC for the per diem use of the GECC Equipment and (ii) to Siemens for the per diem use of the Siemens Equipment, from June 1, 2010 through the date that the notice to the Trustee is sent pursuant to paragraph (j) above; and

3.    The entry of this Order is without prejudice to the rights of the Trustee to seek avoidance of any payments made by InMed to Miles Gilman, Soca Services or Soca Properties pursuant to this Order;

4.    Subject to the terms and conditions of this Sale Order, the Trustee shall be, and hereby is, authorized and directed to sell, transfer, assign and deliver the Assets, including, but limited to, all managed care, insurance, provider agreements and similar agreements to InMed free and clear of any and all liens, such liens to attach to the proceeds. The Trustee is authorized to execute and deliver all documents (both before and after the

{220323.0001/N0828186_1}

Closing) and to take all appropriate actions necessary to evidence and consummate the Closing on the sale of the Assets to InMed and the transactions contemplated thereby. including entering into a management agreement with InMed at Closing for a period of up to six (6) months to allow the Trustee to continue to be the operator of the facility while InMed obtains its Medicare provider number from the applicable governmental agencies and applicable government licenses; provided, however, that such management agreement shall not include any provision that adversely affects the Trustee or the estates, either on a monetary or a non-monetary basis, as reasonably determined by the Trustee and his counsel.

5. After the date of entry of this Order, the Trustee and InMed may enter into (i) and asset purchase agreement upon terms and conditions contained in InMed Asset Purchase Agreement for Coral Springs location, other than as modified by this Order and (ii) make any non-material amendment or modification to the terms of the sale that are not adverse to the estates without the need of further notice and hearing or Court order;

6. The transfer of the assets of the Kissimmee Location (the "Assets") to InMed will be a legal, valid, and effective transfer of the Assets and will vest InMed with all right, title and interest in and to the Assets, free and clear of all Encumbrances of any kind or nature whatsoever, other than assumed liabilities, including, but not limited to (i) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the estate's or InMed's interest in the Assets, or any similar rights, (ii) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Assets prior to the Closing, and (iii) (A) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens,

judgments, rights of setoff, demands, encumbrances, rights of first refusal, or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership, and (B) all debts arising in any way in connection with any agreements, acts, or failures to act, of the estates including those arising under doctrines of successor liability, other than the assumed liabilities.

7. At the closing, InMed shall pay or deliver the Purchase Price into escrow with the Trustee or Trustee's counsel into a separate non-IOTA interest bearing account on behalf of the Debtors' estates;

8. Notwithstanding anything to the contrary contained in this Order or in the Sale Motion, there shall be no allocation among the Debtors' estates of the Purchase Price or the proceeds from the collection of any accounts receivable, until such time as the Court enters an order on a motion filed by the Trustee regarding such allocation, which motion shall be served on all creditors;

9. If any person or entity that has filed financing statements or other documents or agreements evidencing encumbrances on or in the Assets (including encumbrances noted on certificates of title as to any vehicles or equipment, including the Identified Equipment, owned by the Debtors) shall not have delivered to the Trustee at or prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of encumbrances which the person or entity has with respect to the Assets, the Debtors or InMed as the case may be, are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets. InMed is hereby authorized to file,

register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances in or on the Assets of any kind or nature whatsoever;

10. InMed is not an insider of either of the Debtors. Neither the Debtors nor InMed have engaged in any conduct that would cause or permit the InMed's acquisition of the Kissimmee Location to be avoided under Section 363(n) of the Bankruptcy Code;

11. The Debtors, Trustee and InMed have acted in good faith, the terms and conditions of the Sale Motion are fair and reasonable and have been negotiated and agreed upon in good faith on the part of the Debtors, Trustee and InMed. The Court deems InMed to be an arms' length purchaser who is purchasing the Assets in good faith and not an insider of either of the Debtors. The terms and conditions of InMed's purchase of the Kissimmee Location constitute reasonably equivalent and fair market value under the Bankruptcy Code and applicable non-bankruptcy law. Accordingly, InMed is entitled to all of the protections of a good faith purchaser afforded by Section 363(m) of the Bankruptcy Code;

12. On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Assets and a bill of sale transferring good and marketable title in the Assets to InMed free and clear of all encumbrances. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated in the Sale Motion;

13. Any real estate, personal property or other taxes related to the Assets accruing prior to the Closing Date shall be the responsibility of the Debtors' estates. InMed shall take

{220323.0001/N0828186_1}

title to the Assets subject to real estate, personal property or other taxes (excluding income taxes) relating to the Assets accruing on and after the Closing Date and shall indemnify the Debtors with respect thereto. Upon the consummation of the Closing on the purchase of the Assets, any taxing authorities or governmental agencies having jurisdiction over the Assets shall have no further claim against the Debtors or their estates for taxes (excluding income taxes) accruing on or after the Closing Date;

14. The Debtors' estates shall not be liable for any brokerage commissions or finder's fees with respect to the sale of the Assets;

15. The Trustee has exercised sound business judgment in agreeing to the entry of this Order;

16. The terms of the sale are fair and reasonable;

17. The sale of the Assets of the Kissimmee Location to InMed is in the best interest of the estates;

18. As no bids for the Kissimmee Location Center were submitted at the April 8, 2010 auction and sale hearing (the "Auction") before this Court and no other offers have been made to purchase the Kissimmee Location, the Court finds that if the terms and conditions for the sale of the Kissimmee Location as set forth in the Sale Motion were submitted at the Auction in the form of the only 'bid' for the Kissimmee Location, the Court would have deemed such a 'bid' to have been the highest and best offer. Accordingly, the terms and conditions of the sale of the Kissimmee Location to InMed represent the highest and best offer for the purchase of the Kissimmee Location and represents fair and adequate consideration;

{220323.0001/N0828186_1}

19. The Court also finds that notice of the sale and of the Hearings was adequate because all of the parties present at the Auction, with the exception of the other bidders for the Coral Springs location, were present at the Hearings to consider the Sale Motion;

20. Accordingly, the Court finds that it was not necessary for the Debtors or the Trustee to have sought approval of the sale of the Kissimmee Location to InMed subject to higher and better offers;

21. Any creditor or other party in interest that did not file and serve a written objection to the Sale Motion is conclusively deemed to have waived any objection it may have to the Sale Motion or the sale of the Assets to InMed and is deemed to have released all encumbrances in or on or with respect to the Assets, with such encumbrances attaching to the proceeds of the sale as described elsewhere in this Order;

22. With the sole exception of any obligations of InMed set fort in the Sale Motion, InMed does not and shall not be deemed to assume, agree to perform, or pay any encumbrances, liabilities, claims, debts or obligations of the Debtors or their estates.  InMed shall not be, nor shall it be deemed to be, a successor or successor in interest to the Debtors or their estates by reason of any theory of law or equity, and InMed shall not have any successor or transferee liability of any kind or character;

23. InMed shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Assets other than as expressly set forth in this Order.  Without limiting the effect or scope of the foregoing, the transfer of the Assets from the Debtors or their estates to InMed does not and will not subject InMed or its affiliates, successors or assigns or its properties (including the Assets) to any liability for any

{220323.0001/N0828186_1}

encumbrances or claims against the Debtors or their estates or the Assets by reason of such transfer or otherwise under the laws of the United States or any state, territory or possession thereof applicable to such transactions. Neither InMed nor their affiliates, successors or assigns shall be deemed, as a result of any action taken in connection with the purchase of the Assets, to: (a) be a successor to the Debtors; (b) have, de facto or otherwise, merged with or into the Debtors; or (c) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors.  Neither InMed nor their affiliates, successors or assigns is acquiring or assuming any liability, warranty or other obligation of the Debtors or their estates, including, without limitation, any tax incurred but unpaid by the Debtors or their estates prior to the Closing Date, including, but not limited to, any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, fixed or audited, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction, except as otherwise expressly provided in this Order or in the Sale Motion and the assumed liabilities.  Accordingly, the sale of the Assets to InMed shall be free and clear of all encumbrances to the fullest extent allowed under applicable law and equity, all of which encumbrances shall attach to the proceeds of the sale as described elsewhere in this Order;

      24.      The terms and provisions of this Order shall be binding upon the Debtors and their estates, the Trustee, creditors and stakeholders, InMed, all parties to executory contracts and leases to be rejected or otherwise not assumed by the Debtors or Trustee, and all other parties in interest and the respective successors and assigns of each of the foregoing (all of the foregoing whether known or unknown), including any trustee subsequently appointed for

{220323.0001/N0828186_1}

or on behalf of the Debtors upon a conversion to Chapter 7 case under the Bankruptcy Code;

25. Any and all objections to the Sale Motion and to the entry of this Order have been otherwise resolved as described above and have otherwise been overruled in all respects.

26. The granting of the Sale Motion as set forth herein shall not constitute the approval of any plan of reorganization or liquidation for the Debtors;

27. The 14 day stay set forth in Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure is hereby waived, for good cause shown, and this Order shall be immediately enforceable, and the closing on the purchase of the Kissimmee Location may occur immediately following the entry of this Order;

28. The Trustee shall not be required to file the statement with the Court as described in Bankruptcy Rule 6004(f)(1), but shall, upon request, provide the U.S. Trustee with copies of all closing documents following the closing;

29. To the extent there is any inconsistency between the provisions of this Order and the terms of the Sale Motion or any plan confirmed in these cases or any order confirming such plan or any other order entered in these cases, the provisions of this Order shall control; and

30. This Court shall retain jurisdiction to enforce the terms of the this order, including but not limited to: (a) to interpret, implement and enforce the provisions of this Order, (b) as to the Assets and the collection of the accounts receivable owned by the Debtors or their estates and (c) to enforce and implement the terms and provisions of the Sale Motion, and of each of the agreements executed in connection therewith in all respects, including, but

{220323.0001/N0828186_1}

not limited to, retaining jurisdiction to (i) subject to the terms and conditions of the Sale Motion, compel delivery of the Assets to InMed or the performance of other obligations of the Trustee pursuant to the Sale Motion and each of the agreements executed in connection therewith, (ii) compel delivery of the Purchase Price by InMed or the performance of other obligations of InMed under the Sale Motion and each of the agreements executed in connection therewith, including (without limitation) the timely payment of the purchase price, (iii) resolve any disputes arising under or related to the Sale Motion and each of the agreements executed in connection therewith, and (iv) resolve any dispute regarding the validity, extent and/or priority of any alleged encumbrance attaching to the proceeds of the sale of the Debtors' Assets; provided, however, that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the Sale Motion or each of the agreements executed in connection therewith or this Order, such abstention, refusal or lack of jurisdiction shall have no effect upon, and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

###

Submitted by:

Mark S. Roher
Adorno & Yoss LLP
350 East Las Olas Blvd., Suite 1700
Fort Lauderdale, Florida  33301
954-763-1200
954-766-7800 Fax
mroher@adorno.com

Attorney Roher is directed to serve a copy of this Order on all interested parties and file a Certificate of Service with the Court.

{220323.0001/N0828186_1}