**Tagged Opinion**



**ORDERED in the Southern District of Florida on December 08, 2010.**

                                              John K. Olson, Judge
                                              United States Bankruptcy Court

_____

#### UNITED STATES BANKRUPTCY COURT
#### SOUTHERN DISTRICT OF FLORIDA
#### Fort Lauderdale Division
#### www.flsb.uscourts.gov

**In re**:

**Soca Imaging, Inc.** & Navix Imaging, Inc.,

        Debtors.

_____/

Case No. 10-11265-BKC-JKO

Chapter 7 (*Jointly Administered*)

*Previous Chapter 11*

### ORDER ON LYNN H. GELMAN, P.A. FEE APPLICATION [ECF No. 462]

These cases are before me on the fee application [ECF No. 462] filed by the Debtors' Chapter 11 counsel, Lynn H. Gelman, P.A. ("Gelman"). Chapter 7 Trustee Les Osborne filed an objection to the fee application at ECF No. 478.

The application asserts that Gelman incurred 360.7 billable hours of services to the Debtors and seeks compensation for that time at the rate of $350 per hour (aggregating $126,245) together with $11,882.79 in compensable expenses. Gelman holds a prepetition retainer in the amount of $12,500.00. The Trustee's objection asserts that the fee sought is grossly excessive and "does not reflect equivalent benefit" to the Debtors' estates. The objection also points out that the fees were

incurred over a mere three month period.  Insofar as the quality of those services is concerned, the Trustee notes that:

> when the Trustee was appointed [Gelman] could not provide the Trustee with a status of the case.  Also, it appears that [Gelman] did not provide adequate supervision of the chief restructuring officer, Stephen Dresnick.[1]

The Trustee accordingly suggests that the maximum fee *and cost* award be limited to $25,000.00 which, after taking into account the $12,500.00 retainer, would result in a net allowance of an additional $12,500.00.

The Debtors operated a chain of medical imaging centers in Florida.  Getting information about the status of those businesses from Gelman and the Debtor's principal, Miles Gilman ("Gilman"), was almost impossible.  Apparently because of significant ill-will between Gilman and the major creditors in the case, Gelman brought in a putative chief restructuring officer, Stephen Dresnick, M.D. ("Dresnick"), to act as the Debtors' president.  Dresnick was a disaster.

Gelman's performance is simply not commensurate with the requested fees.  Uncomplicated questions from parties in interest (and from me) about the status of leases and operations were met with less-than-helpful responses reflecting either: (1) an unacceptable lack of familiarity with relevant facts; or (2) an inability to articulate those facts.  Whether lack of knowledge or lack of ability to communicate, I conclude that her service as a Chapter 11 lawyer was of *de minimis* value to these two bankruptcy estates.

The ordinary presumption when considering compensation for lawyers in bankruptcy cases is to apply a lodestar hourly rate to the hours reasonably spent.  When one gets to the extreme

---

[1] [ECF No. 478], at ¶ 6.

margins of extraordinarily competent or incompetent counsel, however, the logic of a simple application of the lodestar can lead to absurd results.

I have observed moments of sheer genius from lawyers, the zenith of legal skill applied brilliantly. Awarding fees in such instances on a pure lodestar basis would grossly shortchange that lawyer. The same rule applies at the opposite end of the bell curve. When the legal work provided is so grossly inadequate to the tasks at hand that a fair-minded observer is left with the distinct impression that the lawyer is not doing the job,[2] awarding fees based on a lodestar would lead to an absurd result.

What, then, is a fair fee in a situation like this? The Trustee's objection provides a useful starting point. The Trustee suggests a total fee and cost award of $25,000.00. The Trustee does not challenge any of the particulars of the costs incurred by Gelman, which assertedly aggregate $11,882.79, and this would imply a suggested fee award totaling $13,117.21. Demonstrating the absurdity of the lodestar regime in this case, the award of that amount for the 360.7 hours claimed by Gelman implies a lodestar rate of $36.37 per hour.

Instead, the Trustee must be suggesting that Gelman's fee be calculated on some other basis. Initiating these Chapter 11 cases and keeping them more-or-less alive for a couple or three months has some value, which I would reasonably place in the $10,000 to $15,000 range for the moderately complicated Chapter 11 scenario presented here. The Trustee suggests a notional value of $13,117.21, and I concur.

Based upon the foregoing, it is ORDERED:

---

[2] This case is the only one in which Gelman has appeared before me, and she may well be perfectly capable of handling less complex matters. The hourly rate of $350 which she seeks here may well be an appropriate lodestar for her work in those less complex matters, but it is inappropriate here.

1. The Trustee's objection **[ECF No. 478]** to the fee application of Lynn H. Gelman, P.A., is **SUSTAINED**;

2. Upon the fee application **[ECF No. 462]**, Lynn H. Gelman, P.A., is **AWARDED** fees in the amount of $13,117.21 and costs in the amount of $11,882.79, aggregating $25,000.00;

3. Lynn H. Gelman, P.A., is authorized to apply its retainer of $12,500.00 to this fee and cost award, and is awarded a Chapter 11 administrative expense for the balance of $12,500.00.

###

Copies to: *The Clerk of Court is directed to provide copies of this order to all registered interested parties.*